IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YUSUF KHATRI and ZUBEDA KHATRI (H/W)<br>1906 Witler Street<br>Philadelphia, Pennsylvania 19115<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF PHILADELPHIA<br>1515 Arch Street, Claims Unit, 14th Floor<br>Philadelphia, PA 19107<br><br>Defendant. | CIVIL ACTION<br><br>NO.  25-5561<br><br>JURY TRIAL DEMANDED<br><br>COMPLAINT |

Plaintiffs, Yusuf Khatri and Zubeda Khatri (hereinafter "Plaintiffs" or collectively "the Khatris"), by and through undersigned counsel, Goldin Law Group, P.C., hereby file the foregoing Complaint against the City of Philadelphia (the "City"), and alleges, upon personal knowledge as to itself and upon information and belief as to other matters, as follows:

**Preliminary Statement**

1. This is an action under the Fourteenth Amendment's procedural due process rights and the Fourth Amendment's substantive due process rights.

2. On July 8, 2025, the rear-extension of Plaintiffs' property located at 5313 Mascher Street, Philadelphia, Pennsylvania 19120 (hereinafter, the "Property"). was damaged due to a fire.

3. At all times material hereto, on July 8, 2025, Plaintiffs secured the Property immediately following the abatement of the fire, including boarding up any exposed areas of the Property.

4. On July 8, 2025, the City, acting in the course and scope of their business, sent an Inspector from the City of Philadelphia's Department of Licenses and Inspections to inspect the property after the fire.

5. Upon information and belief, two days after the fire, on July 10, 2025, the Inspector, an agent of the City acting in accordance with the customs and procedures implemented by the City, unilaterally declared Plaintiffs' property "Imminently Dangerous." It is unclear whether the Inspector returned to the Property prior to making the declaration.

6. On information and belief, the City failed to ensure that notice was properly delivered to Plaintiffs the record owner of the Property.

7. On information and belief, the City failed to post notice of the imminently dangerous violation on the Property.

8. Despite failing to deliver timely notice, sometime around July 22, 2025 the City, through its agents, ordered the demolition of Plaintiffs' entire Property without any meaningful notice and without ensuring that Plaintiffs had received notice prior thereto.

9. On information and belief, the L & I inspector who performed the inspection of the Property and/or who ordered the curbside demolition bid of the Property, is an agent of the City who acted in accordance with an established custom implemented by the City. On information and belief, his decision was approved by a City official with full and final authority to order that a property be immediately demolished without adequate notice to the property owner, and without an exigent need to do so.

10. The City's demolition decisions and its executions are made in accordance with the its apparent custom and policy which allows the City, through its agents, to make a decision to demolish, so long as there is an exigent need to do so.

11. The City is bound by the written policies and procedures established in the Philadelphia Administrative Code and Philadelphia Property Maintenance Code (collectively the "Codes").

12. The Codes outline the steps and time frames the City must abide by when it decides to demolish a citizen's property.

13. The procedures outlined in the Codes specifically requires that the "code official", an agent of the City, serve the owner of property deemed "imminently dangerous" written notice describing the danger.

14. The Codes also require the aforementioned written notice to permit the owner of the "imminently dangerous" property to immediately accept or reject the terms of an order to demolish.

15. The procedures outlined in the Codes are required to implemented by the City by and through its agents at the Department of Licenses and Inspections and the City of Philadelphia's Emergency Services and Abatement Unit.

16. The Emergency Services and Abatement Unit, also known as the Contractual Services Unit, (the "Unit") is a subdivision of the Philadelphia Department of License and Inspections.

17. The Unit is responsible for the City's demolition program.

18. The Unit maintains a written guideline as to how the Unit must conduct the demolition process known as the Emergency Services and Abatement Unit Field Manual (the "Field Manual").

19. The Field Manual requires the Unit to "**check the return receipt of the certified mail to ensure property notice has been given to the legal owner**" prior to taking any demolition actions.

20. Notwithstanding these written guidelines, the Unit does not always follow them.

21. Despite the Codes and Field Manual outlining the steps necessary to properly notify the record owners of an unsafe property and the City's intentions, the City has repeatedly disregarded the Codes.

22. At all times material hereto, the City, by and through its agents, failed to serve the Plaintiffs with notice of the demolition of their property prior to taking action to demolish the same.

23. The actions of the City, by and through its agents and code officials, are in direct contravention to the policies and procedures set forth in the Code.

24. The City's decision to demolish without adhering the written policies in the Codes and Field Manual were made in accordance with apparent City "custom" or "policy", and thus, subjects the City to municipal liability.[1]

---

[1] See *Gordon v. City of Phila.*, No. 07-5039, 2009 WL 2710247, at *5 (E.D. Pa. Aug. 28, 2009) (Tucker, J.) ("The City's demolition decision and its execution were made in accordance with apparent City 'custom' or 'policy,' allowing the City to make a decision to demolish, and then within hours to solicit bids from contractors for demolition, and have the contractor demolish the property within three hours of acceptance of the bid. This 'custom' is in direct contravention to the written policies and procedures in the Philadelphia Administrative Code, outlining the steps and time frames the City must abide by when it decides to demolish a citizen's property.").

25. The Plaintiffs' property was destroyed by the City for no good reason and without affording Plaintiffs their due process rights under the Fourteenth Amendment.

26. The City's demolition of Plaintiffs' Property was without meaningful notice and was not reasonable. To Plaintiffs' knowledge, the Property, although needing repairs, was secured and was not dangerous or in an imminent danger of collapse such that would justify depriving Plaintiffs of their due process rights.

27. The City had no reasonable basis to demolish Plaintiffs' property

28. The City official who authorized the demolition of the Property had the stated or customary authority to bind the City to this decision. On information and belief, the official made this decision knowing that the demolition would be started, and likely completed, without adequate notice and in such a manner that Plaintiffs would have no meaningful ability to stop or delay the destruction of their Property.

29. The City's actions constitute a violation of Plaintiffs' right to Due Process under the Fourteenth Amendment and an unreasonable seizure of property under the Fourth Amendment.

30. Plaintiffs have suffered monetary injury as a direct result of the City's constitutional violations as the Property has been destroyed and therefore has a highly diminished value and is not suitable for the purpose for which Plaintiffs purchased it, and because the City is seeking payment of over $20,000.00 from Plaintiffs despite the unconstitutional deprivation of their Property.

31. This action therefore seeks to hold the City liable in money damages for the unreasonable destruction of Plaintiffs' property without meaningful notice, in violation of Plaintiffs' constitutional rights, as well as attorneys' fees and other available relief.

**Parties, Jurisdiction, and Venue**

32. Plaintiffs the Khatris are adult individual citizens of the United States and the Commonwealth of Pennsylvania with a residence located at 1906 Witler Street, Philadelphia, Pennsylvania 19115.

33. Plaintiffs are the owners of real property located at 5313 Mascher Street, Philadelphia, Pennsylvania 19120 (the "Property").

34. Defendant, City is a municipal corporation with offices located at 1515 Arch Street, Claims Unit, 14th Floor, Philadelphia, Pennsylvania 19107.

35. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 because is a claim under the Fourteen Amendment, Fourth Amendment and 42 U.S.C. § 1983.

36. Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial portion of the events or omissions giving rise to the action occurred within this judicial district and the City is subject to personal jurisdiction in this judicial district.

**Background**

37. Plaintiffs have owned the Property since May 29, 1988. A true and accurate copy of the deed for the Property is attached as **Exhibit "A."**

38. Plaintiffs are husband and wife who are senior citizens with limited command of the English language. Many of the actions of Plaintiffs described herein were taken with the assistance of their son, who acts as an agent on their behalf.

39. On or about July 8, 2025, a fire occurred along the one-floor rear extension of the Property which caused damage to the Property.

40. Upon information and belief, on or about July 8, 2025, in response to the fire, the City, by and through its agents at the Department of Licenses and Inspections, dispatched an inspector to conduct an inspection of the Property.

41. Upon information at belief, on July 8, 2025, the City did not issue any violation related to the fire and the Property.

42. On or about July 8, 2025, after the fire was abated, Plaintiffs took steps to secure the property including boarding up the door and windows on the first floor.

43. At all times material hereto, no notice of imminent danger was issued on July 8 or the following day, and no notice of the same was fixed upon the Property in a conspicuous location, as depicted by a timestamped photo of the Property on July 9, 2025 at approximately 10:00am:



44. At all times material hereto, on July 8, 2025, the City, by and through its agents, had not determined that the Property faced any immediate structural threat of safety, such that the City's firefighters provided an escort and allowed the Property's occupant to walk through the first and second floor of the Property to assess the condition following the fire.

45. Following the fire, the following day, Plaintiffs engaged property loss consultants, fire inspectors, and forensic fire consultants to ascertain the condition and damage to the Property.

46. At all times relevant hereto, and upon information and belief, the independent fire inspectors and consultants were on site numerous times, including on July 9, 2025 and July 12, 2025, following the fire and observed the Property to be secured and placarded around the perimeter, including around the origin of the fire.

47. At all times material hereto, upon information and belief, on July 12, 2025, at least one of Plaintiffs' fire examiners inspecting the Property placed a sign and notice at the front of the Property directing the preservation of the Property during the investigation.

48. Unbeknownst to Plaintiffs, the City, on July 10, 2025, though its agents, issued a notice of violation declaring the Property imminently dangerous and ordering Plaintiffs make repairs or take corrective actions by July 19, 2025. A copy of the Notice of Violation is attached as **Exhibit "B"**.

49. Upon information and belief, the City did not affix and/or post the notice of imminent danger on the premises, in a conspicuous place or otherwise on July 8, 2025 or July 10, 2025.

50. At all times material hereto, on or around July 12, 2025, during a visit by Plaintiffs' fire analyst, no notice of imminent danger was affixed or posted on the premises, in a conspicuous place or otherwise.

51. Upon information and belief, no notice of imminent danger was affixed or posted on the premises, in a conspicuous place or otherwise, prior to the City's decision to order the curbside demolition of the Property.

52. The violation also directed Plaintiffs to contact L&I within ten (10) days to arrange for an inspection of the interior of the Property and further directed Plaintiffs to engage an engineer to determine to assess the structural integrity of the Property. *See Ex. B*.

53. Despite the fire occurring on July 8, 2025 and the notice being issued on July 10, 2025, the notice was not delivered to the post office until the close of business on July 11, 2025. See Certified Mail Tracking attached as **Exhibit "C".**

54. The certified mail notice was not received by Plaintiffs until July 29, 2025. See Ex. "C".

55. At all times material hereto, Plaintiffs first receipt of the notice of violation occurred sometime during the week of July 21, 2025, when Plaintiffs received the notice via regular mail – after the appeal period had expired.

56. Following receipt of the notice, Plaintiffs' son visited the Property on the following Saturday, July 26, 2025 to discover that the Property was in the process of being demolished by a company named Pasholli Construction, Inc.

57.     Upon information and belief, sometime on or about July 22, 2025[2], the City, by and through its agent, ordered the demolition of the Property and conducted a curbside bid awarding the demolition bid to Pasholli Construction, Inc.

58.     Upon information and belief, L&I's Field Manual contains written procedures as to the both "Daily demolition bid process" and a "Curbside bid process for Emergencies." See Relevant Portions of the Field Manual attached as **Exhibit "D"**.

59.      Both processes contain requirements that the property be owner be given written notice. See Ex. "D." The guidelines also require the Unit to "**check the return receipt of the certified mail to ensure property notice has been given to the legal owner**." See Ex. "D." (emphasis added).

60.     The Field Manual's notice requirements coincide with the Philadelphia Property Maintenance Code (the "Code"). Section 308.2 of the Code, provides, in pertinent part:

> If an imminently dangerous condition is found, the code official **shall serve on the owne**r, agent or person in control of the structure **a written notice** describing the imminent danger and specifying the required repair to render the structure safe or requiring the imminently dangerous structure or portion thereof to be demolished within a stipulated time. **Such notice shall require the person thus notified to declare immediately to the code official acceptance or rejection of the terms of an order to demolish.**

(emphasis added)

61.     According to the City's website, Stephen Gallagher is the director of L&I's Emergency Services Unit.[3]

---

[2] Plaintiffs rely on the date the demolition permit was issued to Pasholli Construction to form the basis of the date of the demolition bid, however, Plaintiffs have no specific knowledge as to whether the curbside demolition bid was ordered prior to July 22, 2025.
[3] https://www.phila.gov/departments/department-of-licenses-and-inspections/about/leadership/

10

62. On information and belief, the decision to out the Property up for curbside bidding was made by a municipal decisionmaker, Stephen Gallagher, Director of Emergency Services of L & I's Inspections, Safety & Compliance Department, who had the authority to bind the City with respect to this decision.

63. Our Courts have recognized that as Director of the Unit, Stephen Gallagher is a final decision-maker and policy maker with respect to the City's decision to demolish properties. *Dvortsova v. City of Phila.*, 585 F. Supp. 3d 723, 736 (E.D. Pa. 2022).

64. Our Courts have also held that the City's decision to demolish without affording the record owner due process rights has been a custom of the City, has been reprimanded before, and is in direct contravention of the City's written procedures as well as property owners' constitutional due process rights.[4]

65. Here, Plaintiffs did not receive the Notice of Violation with right to appeal instructions until the week of July 21, 2025, after the appeal period had expired.

66. Moreover, the Codes provide, in pertinent part:

**PM-308.3 Posting notice:** Regardless of whether the person addressed with a notice of imminent danger receives service by one or more of the methods specified in the administrative code, a copy of the notice **shall** be posted in a conspicuous place on the premises...

(emphasis added)

67. Here, the City failed to affix and post notice of the imminent danger violation following the issuance of the violation, and, at least, through July 12, 2025.

---

[4] See *Bullard v. City of Phila.*, No. 10-7223, 847 F. Supp. 2d 711, 722 (E.D. Pa. 2012) (Rufe, J.) ("[T]his Court has previously addressed the City's custom of making the decision to demolish, and then, within hours, soliciting bids from contractors and demolishing the building, and found that such a procedure does not comport with due process.") See also *Gordon v. City of Phila.*, No. 07-5039, 2009 WL 2710247, at *5 (E.D. Pa. Aug. 28, 2009) (Tucker, J.)

11

68. Plaintiffs were not given an opportunity to repair or demolish the structure at their own expense.

69. The aforementioned actions and omissions of the City, by and through its agents acting in their official capacity and/or at the direction of the decision maker, are in direct contravention of the policies and procedure the City customarily implements and must abide by.

70. Alternatively, the aforementioned actions and omissions of the City, by and through its agents acting in their official capacity and the decision to disregard the City's written policies and procedures are a custom and practice of the City.

71. As a result of the aforementioned actions, the City, by and through its agents acting in their official capacity, deprived Plaintiffs of their due process rights to challenge the order to demolish, present his objections, or accept the order for demolition.

72. The frequency of the City's demolition practices without affording the record owner notice or due process is such that the behavior is deemed an official custom or practice of the City.

73. Alternatively, Director Stephen Gallagher's order to demolish the Property without affording Plaintiffs proper notice is viewed as an official policy of the City because Director Gallagher, as Director of the Unit responsible for the City demolition abatement program, had full and final authority to order the demolition.

74. Despite demolishing the Property prior to giving Plaintiffs notice, the City issued Plaintiffs a bill for the alleged work related to the demolition of the Property for a total of $20,434.38. A true and accurate copy of the Invoice is attached as **Exhibit "E."**

75. Upon information and belief, no emergent situation existed which warranted the ordering of the demolition at the deprivation of Plaintiffs' due process rights.

76. Further, after the demolition was complete, the City left the Property unsecured and in a state of disarray.

## COUNT I
### (Procedural Due Process)
### Plaintiffs v. City of Philadelphia

77. Plaintiffs incorporate paragraphs 1 through 76 by reference as if set forth fully herein.

78. As the owner of the Property, Plaintiffs possess a constitutionally protected right in that property.

79. 42 U.S.C. § 1983 provides a cause of action against any person who, acting under color of state law, deprives another of their federally protected rights.

80. The Due Process Clause of the Fourteenth Amendment of the United States Constitution requires that government provide a property owner "notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Gordon v. City of Philadelphia*, 2010 WL 1462354 (E.D.Pa. 2009) (quoting *Jones v. Flowers*, 547 U.S. 220 (2006)).

81. The opportunity to be heard must be at a meaningful time and in a meaningful manner. *Midnight Sessions Ltd. v. City of Philadelphia*, 945 F.2d 667, 680 (3d.Cir. 1991).

82. This Court has previously adopted the Pennsylvania Supreme Court's holding that "where a property owner's identity and whereabouts are "readily accessible"

13

to a municipality, the property owner has a claim for damages against the municipality if it fails to provide notice of an impending demolition." *Swinson v. City of Phila.*, No. 13-6870, 2016 U.S. Dist. LEXIS 47008, at 7 (E.D. Pa. Apr. 7, 2016) (citing *Pivirotto v. City of Pittsburgh,* 515 Pa. 246, 528 A.2d 125, 129 (Pa. 1987)).

83. Procedural due process requires that a governmental deprivation of a protected interest be preceded by notice and an opportunity to be heard.

84. The City did not give Plaintiffs adequate notice of its intention to demolish the Property.

85. Indeed, the City's delay in issuing the violation and delay in mailing the violation deprived Plaintiffs of the opportunity to be heard prior to the demolition of their Property.

86. Neither Plaintiffs nor any persons on site observed any notices affixed to the property, and received no written communication from the City about its intentions to demolish the property until after demolition began.

87. The City's decision to demolish the Property was made in accordance with the City's custom and practice, which authorizes the City, through the Department of License & Inspections, to make a decision to demolish a property it deems "Dangerous," then solicit bids in a matter of hours from contractors for demolition, and have the winning bidder demolish the Property.

88. This custom and practice is in direct contravention with the City's written policies, namely the aforementioned Codes, and as outlined in the Emergency Services and Abatement Unit Field Manual (the "Field Manual"), prior to soliciting bids for demolition,

the City's inspector is required to provide the owner with written notice of the intent to demolish and provide the owner an opportunity to accept or reject the order to demolish.

89. Moreover, the Codes and Field Manual instruct the City's agent to take reasonable measures to ensure the record owner of the property received the written notice prior to demolition.

90. The City failed to provide Plaintiffs, the record owners, with notice, pursuant to the Codes, prior to soliciting bids for the demolition of the Property.

91. The City failed to take measures to ensure that the Plaintiffs, the record owners, received the notice to demolish prior to commencing the demolition.

92. The City failed to provide the Plaintiffs, the record owners, an opportunity to accept or reject the City's order, as required under the Philadelphia Property Maintenance Code.

93. The City commenced demolition of the Property prior to the Plaintiffs' receipt of notice of the violation.

94. The City deemed the Property "imminently dangerous" based upon the City's Inspector's visual inspection.

95. The City did not conduct any independent testing to determine whether structural elements had failed.

96. The City demolished the property without affording the Plaintiffs their procedural due process rights under the 14th Amendment.

97. The City's decision to demolish without affording the record owner his due process rights has been a custom of the City, has been reprimanded before, and is in direct contravention of its written procedures.[5]

98. Upon information and belief, the Property was not, in fact, "imminently dangerous" or in "imminent danger of collapse" but could have been safely remediated, and an emergency demolition without notice was not reasonably necessary.

99. Plaintiffs have been damaged by the City's actions through the diminution in the value of the Property, loss of use of the Property, and the City's seeking reimbursement from the Plaintiffs for the unconstitutional demolition.

100. Plaintiffs are entitled to monetary damages for the City's unconstitutional actions.

101. Plaintiffs are entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiffs requests judgment in their favor and against Defendant, the City of Philadelphia, and award all such relief as is just and proper, including, but not limited to an award of damages sufficient to compensate Plaintiff for the demolition of his property, together with punitive damages, costs and attorneys' fees pursuant to 42 U.S.C. § 1988, and any other relief this Court deems appropriate.

---

[5] See *Bullard v. City of Phila.*, No. 10-7223, 847 F. Supp. 2d 711, 722 (E.D. Pa. 2012) (Rufe, J.) ("[T]his Court has previously addressed the City's custom of making the decision to demolish, and then, within hours, soliciting bids from contractors and demolishing the building, and found that such a procedure does not comport with due process.") See also *Gordon v. City of Phila.*, No. 07-5039, 2009 WL 2710247, at *5 (E.D. Pa. Aug. 28, 2009) (Tucker, J.)

**COUNT II**
**(Substantive Due Process)**
**Plaintiffs v. City of Philadelphia**

102. Plaintiff incorporates paragraphs 1 through 101 by reference.

103. The demolition of the Properties constitutes a seizure within the ambits of the Fourth Amendment.

104. The demolition of the Property without providing Plaintiffs with the opportunity to make any required repairs or challenge the demolition was unreasonable and constituted a violation of Plaintiffs' rights.

105. To the extent the City made any attempt to notify Plaintiffs prior to the demolition, such attempt was wholly inadequate, in that it was not reasonably calculated, under all the circumstances, to apprise Plaintiffs of the pendency of the demolition and afford Plaintiffs an opportunity to be heard.

106. The City has a policy and practice of seizing real property without taking reasonable steps to assure that the owners of such property are afforded notice of the seizure and/or a meaningful opportunity to be heard.

107. As a direct and proximate result of the City's actions, Plaintiffs suffered actual damages, including the lost use and enjoyment of their house.

108. No adequate recourse was provided whereby Plaintiffs could challenge the actions of the City.

109. Plaintiffs are entitled to monetary damages for the City's unconstitutional actions.

110.  Plaintiffs are entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiffs requests judgment in their favor and against Defendant, the City of Philadelphia, and award all such relief as is just and proper, including, but not limited to an award of damages sufficient to compensate Plaintiff for the demolition of his property, together with punitive damages, costs and attorneys' fees pursuant to 42 U.S.C. § 1988, and any other relief this Court deems appropriate.

Respectfully submitted,

**GOLDIN LAW GROUP, P.C.**

/s/ Jeffrey J. Goldin
Jeffrey J. Goldin, Esquire
I.D. No.: 312689
135 Old York Road
Jenkintown, PA 19046
(215) 261-7505 - Telephone
(267) 865-6930 – Fax
jgoldin@glgphilly.com
Attorney for Plaintiff

Dated:  September 29, 2025